STATE OF RHODE ISLAND : SUPERIOR COURT
WASHINGTON, SC. :

RAYMOND BIGELOW, :
Individually and as representative
of all Rhode Island residents with current :
policies of automobile insurance issued by
Allstate Insurance Company : C.A. No.: WC/05-136

vs. :

ALLSTATE INSURANCE COMPANY, &
BRAD LALIBERTE

# AMENDED COMPLAINT

## COUNT 1
## NEGLIGENCE

1. Plaintiff, Raymond Bigelow is a resident of the Town of Hope Valley, County of Washington, State of Rhode Island. ("Bigelow")

2. Defendant, Brad Laliberte is a resident of the Town of Foster, County of Providence, State of Rhode Island. ("Laliberte")

EXHIBIT
tabbies
A

3. Defendant, Allstate Insurance Company ("Allstate") is, and at all times material hereto was, a corporation licensed to do business and doing business in the State of Rhode Island.

4. Defendant, Allstate issued a policy of automobile insurance to the plaintiff pursuant to policy number 619395347 that at all times material hereto, was in full force and effect. ("The Policy")

5. On or about August 14, 2002, Laliberte was the owner and operator of a motor vehicle traveling eastbound on Route 101 at the intersection of Route 94 a public highway, in the Town of Foster, State of Rhode Island.

6. At the aforementioned time and place, Laliberte negligently operated said motor vehicle causing same to collide with the driver's side rear of a motor vehicle owned, operated and occupied by Bigelow.

7. At all times material hereto, Bigelow was in the exercise of due care.

8. As a direct and proximate result of the negligence of Laliberte, Bigelow sustained a loss of use of his automobile, sustained severe injuries to his body and mind, has incurred and will continue to incur medical expenses

for the care and treatment of same, has suffered and will continue to suffer lost wages and/or loss of earning capacity, and has been forced to suffer and will continue to suffer further pain, suffering and loss of enjoyment of life all to his detriment.

9. The monetary amount claimed herein is sufficient to establish the jurisdiction of the Superior Court.

WHEREFORE Bigelow demands judgment against Laliberte in an amount sufficient to fully compensate him for his damages herein alleged plus statutory interest and costs.

## COUNT 2
## BREACH OF CONTRACT
## ALLSTATE'S "CUSTOMER SERVICE PLEDGE"

10. Bigelow hereby repeats and realleges paragraphs 1 through 9 of Count 1 as if fully set forth herein.

11. At all times material hereto, Bigelow had a policy of automobile insurance in full force and effect, issued and serviced by Allstate. ("The Policy")

12. "The Policy" between Bigelow and Allstate is a legal contract under Rhode Island law.

13. Allstate has the affirmative duty to fully disclose to Bigelow all pertinent benefits, coverages, or other provisions of "The Policy" upon request.

14. Allstate has the implied duty of good faith and fair dealing incidental to its contractual relationship with Bigelow.

15. In 1998, Allstate implemented the "CCPR II Defense of Litigated Files" (A.K.A. DOLF) program in the State of Rhode Island.

16. The "DOLF" program was not and is not a secret or "confidential" claims handling program.

17. Attorney Michael J. Reed, Jr., Esq., attempted to discuss the DOLF claims handling program with the Honorable presiding Justice Rodgers.

18. Attorney Michael J. Reed, Jr. Esq., gave the Honorable presiding Justice Rodgers a brief outline of the DOLF claims handling program.

19. Michael J. Reed, Jr. Esq. wanted to advise the Honorable presiding Justice Rodgers of how the DOLF claims handling program could benefit 1) the court; 2) plaintiffs and 3) *Allstate insured's.*

20. At all times material hereto, Allstate does not have a regular practice of disclosing the DOLF claims handling program to its insured's.

21. Allstate does not disclose the DOLF claims handling program on its web site.

22. Allstate does not disclose the DOLF claims handling practice to its corporate sales agent staff.

23. Allstate does not disclose the DOLF claims handling program to its independent sales agent(s).

24. Allstate does not disclose the DOLF claims handling program in the actual insurance policy/contracts and/or endorsements.

25. Allstate has no policy or procedure in place to disclose the DOLF claims handling program to its policyholders.

26. Allstate has no plan, policy, program and/or protocol to disclose the DOLF claims handling program to Rhode Island Allstate policyholders.

27. By letter dated December 9, 2004, through counsel, Bigelow asked Allstate to provide him with "any and all documentation setting forth Allstate's so-called DOLF program and how said program may affect Allstate's overall handling of this claim on behalf of your respective policyholders Ms. Paula Laliberte as well as Mr. Raymond Bigelow."

28. Allstate has willfully and intentionally refused to provide its insured, Bigelow with the requested documentation.

29. Allstate has breached the implied covenant of good faith and fair dealing with Bigelow, by willfully and intentionally failing to fully disclose the DOLF program.

## "CUSTOMER SERVICE PLEDGE"

30. At all times material hereto, Allstate has advertised and promoted its "*Customer Service Pledge*", to first and third party claimants.

31. In relevant part, Allstate's "*Customer Service Pledge*" states: "Because you have been involved in an accident with an Allstate policyholder, we consider you our customer and will provide you with quality customer service. In and effort to provide you with this quality customer service, *we promise* you the following:

1) We will *fully explain the process*, take time to answer all questions and concerns that you may have, and keep you informed throughout the claim process.

32. Allstate has willfully and intentionally refused to honor its "*Customer Service Pledge*" by failing to "*fully explain the process*" to its "customer"/policyholder, Bigelow.

WHEREFORE, Bigelow hereby demands injunctive relief, together with counsel fees pursuant to R.I.G.L. 9-1-45 and costs pursuant to R.I.G.L. 9-30-10 for having to bring this action, together with any and all further relief this honorable Court deems fair and just under the circumstances, including

punitive damages for Allstate's willful and intentional breach of contract and breach of its "*Customer Service Pledge.*"

**COUNT 3**
**CLASS ACTION**

33. Bigelow hereby repeats and realleges paragraphs 1 through 32 of Counts 1 & 2 as if fully set forth herein.

**INTRODUCTION**

34. Bigelow individually and on behalf of all Rhode Island residents with current policies of automobile insurance issued by Allstate, brings this cause of action pursuant to Super. R. Civ. P. 23 as amended, seeking monetary, declaratory, and injunctive relief.

35. On July 18, 2007, J. Robert Hunter, Director of Insurance for the "Consumer Federation of America", ("CFA") 1620 I Street, NW; Suite 200 Washington, D.C. 20006, published a study entitled "*The 'Good Hands' Company or Leader in Anti-Consumer Practices? 'Excessive Prices and Poor Claims Practices at the Allstate Corporation.*"

36. In researching and writing about Allstate's "*Questionable claims settlement practices,*" Director Hunter stated: "It (Allstate) adopted *these techniques* after being told by a consultant that *these systems* would put them in a "*zero-sum game*" with claimants, including policyholders who filed claims, in which Allstate shareholders would benefit financially at the expense of policyholders."

37. According to the research conducted by Director Hunter, as a direct result of the "*questionable*" "*techniques*" and "*systems*" implemented by Allstate, the "good hands people" charged "*excessive*" rates while reaping the benefits of "*excessive*" profits.

38. According to Director Hunter; "*Based on our investigation, CFA urges consumers to consider the findings of this report before purchasing or renewing home and auto insurance from Allstate. We also urge action by state insurance departments, the National Association of Insurance Commissioners and the federal government to study and correct Allstate's practices.*

39. Under the heading "*Actions the States Should Take,*" the "CFA urges the National Association of Insurance Commissioners to undertake a market conduct examination of Allstate to look into the anti-consumer actions documented in this report." The exam should focus, at least in part, on how Allstate is able to *pay 20 percent less* than it used to in claims, as compared to the rest of the property-casualty industry." "States should also determine if the rates charged by Allstate in each state for each line of insurance are too high, given Allstate's unusually high profits and low cost/benefit ratios we documented." "If rates are too high, insurance commissioners should follow the lead of California in convening hearings to require Allstate to demonstrate why the rates should not be reduced."

40. Consistent with the findings of CFA, the cause of action asserted against Allstate by Bigelow and the class he represents is based upon Allstate's national Claims Core Process Redesign and Defense of Litigated Filed program, ("CCPR/DOLF") as implemented in Rhode Island in the fall

of 1998, as well as Allstate's institutional breach of its "*Customer Service Pledge.*" The CCPR/DOLF claims handling and litigation program ("the program") constitutes a materially misrepresented, deceptive, and/or non-transparent transfer of risk from Allstate Policyholders to Allstate. The program represents a fundamental repudiation of the historical fiduciary/indemnity insurance paradigm, replacing same with a business practice that places the interests of the corporate shareholders and executives above the interests and reasonable expectations of all Rhode Island premium paying policyholders with automobile insurance policies issued and serviced by Allstate.

41. At all times material hereto, Allstate advertised, solicited and sold automobile insurance policies in Rhode Island, promising its customers protection "from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto." Moreover, Allstate advertised and promoted its "*Customer Service Pledge.*"

42. Plaintiff and class member plaintiffs have paid for the "peace of mind" protection promised by Allstate pursuant to the express and/or implied terms of "The Policy."

43. Pursuant to the express and/or implied terms of "The Policy," Allstate is contractually obligated to fully disclose to plaintiff and class member plaintiffs, all pertinent benefits, coverages, policy provisions, claims handling policies and procedures, insured rights and responsibilities, and the manner in which all claims will be defended and/or settled pursuant to "The Policy" and according to Rhode Island Law. Moreover, Allstate has a duty to fully and fairly honor its "*Customer Service Pledge.*"

44. Upon information and belief, pursuant to the CCPR/DOLF program, injury victims that do not hire lawyers may get the much acclaimed "good hands" treatment. For those injury victims, including Allstate policyholders such as Bigelow, that choose to retain the services of an attorney, they receive the undisclosed "boxing gloves" treatment, calling for "aggressive" litigation tactics, "automatic rejection" of statutory pre-

litigation and mandatory court-annexed arbitration decisions, and in general, a "defend to the end," "scorch the earth," approach to the "adjustment" of meritorious claims, in which "Allstate gains-Others must lose."

45. Allstate has been unjustly enriched by its material misrepresentations at the expense of the plaintiff and class member plaintiffs.

46. Bigelow and the putative class member plaintiffs are all Rhode Island persons with policies of automobile insurance issued by Allstate.

47. Upon information and belief, no other class action on the particular issues raised herein has been filed in the preceding 3 years.

48. Bigelow is an adult presently residing in the Town of Hope Valley, County of Washington, State of Rhode Island. Bigelow is a member of the class defined herein and seeks to be certified as a class representative of this class.

## CLASS ALLEGATIONS

49. Bigelow seeks certification individually and as class representative of all Rhode Island Allstate Policyholders defined as follows:

*"All Rhode Island residents with current policies of automobile insurance in full force and effect." (hereinafter "the class")*

To be excluded from the class is all directors, officers, agents and/or employees of Allstate. Also to be excluded from the class is all persons who have claims in excess of $75,000.

This action is properly brought as a class action pursuant to Super. R. Civ. P. 23 and the "Class Action Fairness Act of 2005" for the following reasons:

a) Although plaintiff is unaware of the exact number of class members, according to Allstate's website, the carrier insured 79,402 automobile premium paying "customers" in the State of Rhode Island, as of the end of 2006. Plaintiff believes and therefore alleges that the members of the class are so *numerous* that joinder of all members is impracticable.

b) There are questions of law and fact *common* to this action under Rhode Island law, which predominate over any questions solely affecting individual class members. Among the common questions under Rhode Island law and fact are:

1) Whether the intentional refusal and failure to disclose its CCPR/DOLF claims handling procedures constitutes a material misrepresentation by omission, incidental to the purchase and/or renewal of the standard automobile insurance contracts.

2) Whether Allstate's intentional refusal and failure to disclose the alleged benefits of its CCPR/DOLF claims handling program to its Rhode Island policyholders, violates its duty of good faith and fair dealing.

3) Whether Allstate claims adjusters have an ethical duty to disclose the alleged benefits of its CCPR/DOLF claims handling program to its Rhode Island premium paying policyholders.

4) Whether Allstate claims adjusters have a continuing obligation to reassess whether payment should be made on a particular claim.

5) Whether Allstate explains, instructs, trains, informs and/or otherwise advises its employees, sales agents, claims representative, and/or independent insurance sales staff, of the duty to disclose the alleged benefits of its CCPR/DOLF claims handling program to present and/or prospective Rhode Island Allstate policyholders, in order to insure that these insurance customers have the requisite knowledge to make an informed "choice" when selecting and/or renewing policies of automobile insurance with Allstate.

6) Whether Allstate's CCPR/DOLF claims handling program places the carrier's financial interests above its contractual duties to its Rhode Island policyholders.

7) Whether Allstate's CCPR/DOLF claims handling program creates prima facie conflicts of interest between "in-house" and other "retained" counsel employed or selected by Allstate "to protect" the

interests of Rhode Island policyholders and/or otherwise wrongfully interferes with these client/attorney relationships.

8) Whether Allstate has acted and continues to act to conceal from its Rhode Island policyholders the alleged benefits of its CCPR/DOLF claims handling program.

9) Whether Allstate's CCPR/DOLF claims handling program violates the reasonable expectations of its premium paying policyholders.

10) Whether Allstate's CCPR/DOLF claims handling program violates Rhode Island Law.

11) Whether plaintiff and the class members are entitled to injunctive relief, requiring Allstate by and through its employees, agents, servants, in-house, and retained counsel, to fully and fairly disclose to all Rhode Island policyholders, and clients, the alleged benefits of its CCPR/DOLF claims handling program.

12) Whether plaintiff and the class members are entitled to "the choice" of a return of their premiums after the disclosure of Allstate's CCPR/DOLF claims handling program.

13) Whether plaintiff and the class members are entitled to an award of punitive damages against Allstate based upon the carriers intentional and material misrepresentations by omission, relative to its CCPR/DOLF claims handling program, at the inception and/or renewal of Rhode Island automobile insurance policies.

14) Whether the CCPR/DOLF program constitutes the unauthorized practice of law under Rhode Island Law.

15) Whether the mandates of the CCPR/DOLF claims handling program violate other internal codes of conduct set forth in Allstate claims and/or litigation management guidelines, protocols and/or procedures.

16) Whether Allstate systematically fails to honor its "*Customer Service Pledge*," either before or after its "customers" retain counsel.

50. The claims of the plaintiff are *typical* of other class members arising from common policy language and other available information, or lack thereof, juxtaposed with the CCPR/DOLF claims handling program.

51. Plaintiff will fairly and *adequately* protect the interests of the members of the class. Plaintiff has no interest antagonistic to those of other members, and plaintiff has retained an experienced trial attorney, with a particular and acute level of experience in the subject matter of this particular class action.

52. A class action is *superior* to the other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a) Given the size of individual class members' claims and the expense of litigating those claims, few members of the class could afford to or would seek legal redress individually for the wrongs Allstate has committed and continues to commit against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b) When the liability of Allstate has been adjudicated, claims of all class members can be administered efficiently and/or determined by the Court;

c) This action will promote an orderly and expeditious administration and adjudication of the class claims; economies of time, effort, and resources will be fostered; and uniformity of decisions will be ensured; and

d) Without a class action, the class members will continue to suffer from Allstate's non-disclosure, and Allstate will continue to violate the law and public policy of this State, and be otherwise unjustly enriched and continue to retain the substantial premium proceeds paid for by its Rhode Island policyholders for the promise of "peace of mind" "protection" in the event of a covered claim or loss.

Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

53. Plaintiff seeks preliminary and permanent injunctive relief and equitable relief on behalf of the entire class, on grounds generally applicable to the

entire class, to require Allstate to fully and fairly disclose to its policyholders, the alleged pertinent benefits, protections and other provisions of its CCPR/DOLF claims handling program. Plaintiff also seeks preliminary and permanent injunctive relief and equitable relief, on grounds generally applicable to the entire class, requiring Allstate to disgorge all of their ill gotten gains from the failure to fully and fairly disclose its CCPR/DOLF claims handling program to those class members who seek a return of their premiums upon discovering that in the event of a covered loss or claim, they may not receive the "peace of mind" "protection" promised by Allstate, but instead, costly, protracted, and time consuming litigation with the potential for personal economic responsibility in the event of a verdict in excess of the applicable per person policy limit.

**BREACH OF CONTRACT**
**MATERIAL MISREPRESENTATION [illegible]**

54. Plaintiff and the class member plaintiffs entered into contracts with Allstate by virtue of their purchase of standard Rhode Island automobile insurance policies.

55. Plaintiff and the class member plaintiffs have paid for the promise of "peace of mind" "protection" through their premium dollars.

56. As part of their paid for insurance "protection," in the event of a covered loss and/or claim, plaintiff and the class member plaintiffs have the right to enter into a "client-attorney" relationship with counsel selected by Allstate, unencumbered by and not subject to Allstate's CCPR/DOLF claims handling and litigation management guidelines or protocols.

57. Allstate has and continues to breach the implied covenant of good faith and fair dealing at the inception, renewal and/or during the term(s) of the insurance policies issued to plaintiff and class member plaintiffs, by intentionally and systematically failing to disclose the CCPR/DOLF claims and litigating program.

58. Allstate has and upon information and belief, continues to breach its own *"Customer Service Pledge,"* by intentionally and systematically refusing to honor its express promise to "*fully explain the process*" to *first and third-party* "customers," such as Bigelow.

59. The CCPR/DOLF program is contrary to the public policy of the State of Rhode Island, as set forth by the Rhode Island Supreme Court in *Skaling vs. Aetna* 799 A. 2d 997, wherein the Court held; "*It is the policy of this state to encourage the settlement of controversies in lieu of litigation…"insurers are under an equivalent duty to participate in settlement negotiations for first-party claims and third-party claims.*"

60. As a direct and foreseeable consequence of the foregoing, plaintiff and the class member plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, plaintiff and class member plaintiffs respectfully request that the Court certify this case as a class action and judgment be entered for the plaintiff and the class against the defendant for damages as described herein; that the Court declare that Allstate has an affirmative duty to fully and fairly disclose its CCPR/DOLF claims and litigation program to its Rhode Island premium paying policyholders; and that Allstate has the duty to fully and fairly honor its "*Customer Service Pledge*." Plaintiffs and class

member plaintiffs hereby seek any and all further relief in law and/or equity, including costs, counsel fees, punitive damages, and rate reductions, as this honorable Court deems fair and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury and hereby designates Dennis D. Bossian, Esq., as trial counsel.

Plaintiff,
Raymond Bigelow, individually
and on behalf of all Rhode Island
Residents with current automobile
insurance policies issued by Allstate.

______________________
Dennis D. Bossian, Esq #3674
231 Quaker Lane
West Warwick, Rhode Island 02903
(401) 828-5463 Ph
(401) 828-5974

Date:____________