# EXHIBIT A

**State of Rhode Island and Providence Plantations**
**DEPARTMENT OF BUSINESS REGULATION**
***Division of Insurance***
**233 Richmond Street**
**Providence, RI 02903**

**INSURANCE REGULATION 73**

**UNFAIR PROPERTY/CASUALTY CLAIMS SETTLEMENT PRACTICES REGULATION**

**Table of Contents**

| | |
|---|---|
| Section 1 | Authority |
| Section 2 | Purpose |
| Section 3 | Definitions |
| Section 4 | Claim Files |
| Section 5 | Miscellaneous Obligations of Insurer |
| Section 6 | Standards for Prompt, Fair and Equitable Settlements |
| Section 7 | Standards for Prompt, Fair and Equitable Settlements Applicable to Automobile Insurers |
| Section 8 | Standards for Prompt, Fair and Equitable Settlements Applicable to Fire and Extended Coverage Type Policies with Replacement Cost Coverage |
| Section 9 | Department Complaint Review |
| Section 10 | Effective Date |

***Section 1.*** ***Authority***

This Regulation is adopted under the authority of R.I. Gen. Laws § 27-9.1-1 *et seq.* (The Unfair Claims Settlement Practices Act) and R.I. Gen. Laws § 42-14-17.

***Section 2.*** ***Purpose***

The purpose of this Regulation is to establish minimum standards for the investigation and disposition of property and casualty claims arising under insurance Policies or Certificates as defined in this Regulation issued to residents of Rhode Island and to define procedures and practices which may constitute unfair claims settlement practices. This Regulation does not apply to claims involving workers' compensation, fidelity, suretyship, or boiler and machinery insurance.

*Section 3.* ***Definitions***

The following terms are defined as follows:

A. "Aftermarket Part," as defined in R.I. Gen. Laws § 27-10.2-1, means a motor vehicle body replacement part that is not an original equipment manufacturer part;

B. "Automobile Body Shop," as defined in R.I. Gen. Laws § 5-38-1, means any establishment, garage, or work area enclosed within a building where repairs are made or caused to be made to motor vehicle bodies, including fenders, bumpers, windshields, glass and similar components of motor vehicle bodies as distinguished from the chassis, seats, motor, transmission, air conditioning condenser, radiator and other accessories for propulsion and general running gear of motor vehicles, except as excluded in R.I. Gen. Laws § 5-38-20;

C. "Claimant," except as otherwise specifically provided in Section 9 hereof, means a First or Third Party Claimant as defined in this section;

D. "Claim File" means any retrievable electronic file, paper file or combination or both maintained by an Insurer as defined this section in connection with a claim filed with the Insurer;

E. "Communication" means all written correspondence, memoranda, notes or notifications, e-mail or other electronically generated correspondence regardless of source or type, that is related to the handling of the claim;

F. "Damaged Motor Vehicle Body Part" means any part of the body of a motor vehicle which is damaged as the result of a collision with another motor vehicle or object. Such parts shall include: fenders, bumpers, windshields, glass and similar components of motor vehicle bodies as distinguished from the chassis, seats, motor, transmission, air conditioning condenser, radiator and other accessories for propulsion and general running gear of motor vehicles;

G. "Days" means business days;

H. "Department" means the Rhode Island Department of Business Regulation;

I. "Director" means the Director of the Department of Business Regulation or his or her designee;

J. "Division" means the Insurance Division of the Department of Business Regulation;

K. "Documentation" includes, but is not limited to, all pertinent Communications, transactions, notes, work papers, claim forms, bills, and explanation of benefits forms relative to the claim;

L. "First Party Claimant" means an Insured who asserts a claim against his or her Insurer as defined in this Section;

M. "Insured" means any Person named on a Policy with legal rights to the benefits provided by the Policy;

N. "Insurer" means any Person engaged in the business of property and casualty insurance;

O. "Investigation" means all activities of an Insurer directly or indirectly related to the determination of liabilities under coverages afforded by a Policy;

P. "Notification of Claim" means any notification, whether in writing or other means, acceptable under the terms of a Policy to an Insurer, by a Claimant, which reasonably apprises the Insurer of the facts pertinent to a claim;

Q. "Original equipment manufacturer part" or "OEM part" shall be defined as in R.I. Gen. Laws § 27-10.2-1(2);

R. "Person" means any natural or artificial entity including, but not limited to, individuals, partnerships, associations, trusts or corporations, or limited liability corporations;

S. "Policy" means any contract of property and/or casualty insurance including but not limited to certificates of such insurance. "Policy" or "Certificate" for purposes of this Regulation shall not mean contracts for workers' compensation, fidelity, suretyship or boiler and machinery insurance;

T. "Replacement Vehicle" means a motor vehicle which is of like kind and quality. A motor vehicle of like kind and quality shall be: (i) manufactured by the same manufacturer; (ii) be the same or newer model year; (iii) have a similar body style; (iv) have similar options and mileage; and (v) be in as good or better overall condition as the motor vehicle deemed to be a total loss; and

U. "Third Party Claimant" means a Person, other than the Insured, who claims that the Insured is legally liable to them for damages resulting from

an act, accident, occurrence or other covered event as a result of which the Insured's Policy may be obligated to provide coverage;

*Section 4.* ***Claim Files***

Each Insurer's Claim Files are subject to examination and investigation by the Director at any time during the Insurer's normal business hours. The Insurer shall maintain claim data, including, but not limited to, the claim number, line of coverage, date of loss and date of payment of the claim, date of denial or date closed without payment in a form and manner that is accessible and retrievable for examination by the Director. This data must be available for all open files and for closed files for the current year and four (4) preceding years. Detailed documentation shall be contained in each Claim File in order to permit reconstruction of the Insurer's activities relative to each claim. Each document within the Claim File shall be noted as to date received, date processed, or date mailed. All Insurers shall maintain Claim Files in a form such that said files can be duplicated and reduced to printed paper copy.

*Section 5.* ***Miscellaneous Obligations of Insurer***

A. An Insurer shall fully disclose to its Insured all pertinent benefits, coverages, or other provisions of a Policy under which a claim has been presented.

B. An Insurer shall not deny a claim of its Insured because its Insured has failed to give written notice of loss within a specified time limit, unless the written notice is an express Policy condition, or because its Insured has failed to give written notice, after being requested to do so, is so unreasonable as to constitute a breach of the Insured's duty to cooperate under the policy with the Insurer.

C. An Insurer shall not indicate to a Claimant on a payment draft, check or in any accompanying letter that said payment is "final" or "a release" of any claim or specified part of a claim, unless the Policy limit has been paid or there has been a compromise settlement agreed to by the Claimant and the Insurer as to coverage and amount payable under the Policy for ány claim or specified part of a claim.

D. Every Insurer, upon receiving Notification of Claim from Claimant shall, (i) within ten (10) Days, acknowledge the receipt of such notice in writing and (ii) unless payment in settlement of that claim is made within that period of time promptly provide necessary forms and instructions necessary to process the claim.

E. In addition to the requirements in subsection 5D, the Insurer upon receiving Notification of Claim shall inform the Claimant in the Insurer's written acknowledgment of receipt of the claim, or sooner if the Claimant

inquires, if coverage exists for the rental of an automobile comparable to the Claimant's damaged vehicle.

F. Every Insurer, upon receipt of any inquiry from the Department regarding a claim shall, within fifteen (15) Days of receipt of such inquiry, furnish the Department with a written response to the inquiry in duplicate.

G. An Insurer shall reply in writing within ten (10) Days to all written Communications from a Claimant which suggest a response is expected.

H. Upon request by an Automobile Body Shop, an Insurer must notify the Automobile Body Shop of the name(s), address(es), telephone number(s) of any lienholder(s) on the vehicle which is the subject of the claim.

I. All Insurers shall report all vehicle thefts within thirty (30) Days of the theft and all salvage declarations to the National Insurance Crime Bureau (NICB) or a similar organization, acceptable to the Department, that maintains a central database of automobile theft and salvage.

*Section 6.* ***Standards for Prompt, Fair and Equitable Settlements***

A. Except as provided in section 6B(1) or (2) below, within fifteen (15) Days after receipt by the Insurer of properly executed proofs of loss, the Claimant shall be advised of the acceptance or denial of the claim by the Insurer. No Insurer shall deny a claim on the grounds of a specific provision, condition, or exclusion in the Policy unless reference to such provision, condition, or exclusion is included in the denial. The denial must be given to the Claimant in writing and the Claim File of the Insurer shall contain such documentation of the denial as required by section 4.

B. (1) If the Insurer needs more time than provided in section 6A above to determine whether a claim should be accepted or denied, it shall notify the Claimant within fifteen (15) Days after receipt of the proofs of loss, giving the reasons more time is needed. If the Investigation remains incomplete, the Insurer shall, forty-five (45) Days from the initial notification and every forty-five (45) Days thereafter until the claim is accepted or denied, send to the Claimant a letter setting forth the reasons additional time is needed for Investigation.

(2) If the Insurer needs more time than provided in subsection 6(A) above to determine whether a claim should be accepted or denied because there is a reasonable basis supported by specific information for suspecting that the Claimant has fraudulently caused or contributed to the loss, the Claimant shall be advised of the acceptance or denial of the claim by the Insurer after a

reasonable time for Investigation. The Insurer is relieved from the other requirements of subsection 6A and subsection 6(B)(1); provided, however, that any information relating to fraud obtained by the Department pursuant to this subsection may be considered confidential by the Department.

C. Insurers shall not fail to settle claims filed by a First Party Claimant on the basis that responsibility for payment should be assumed by others except as is expressly provided by Policy provisions.

D. Where liability and damages are reasonably clear, the Insurer shall not recommend that a Third Party Claimant make a claim under his or her own Policy.

E. No Insurer shall commence or continue negotiations for settlement of a claim directly with a Claimant who is not legally represented, unless or until the Insurer has given the Claimant written notice of the applicable statute of limitations. In addition to said initial notice, written notice of said statute of limitations shall be given to First Party Claimants at least thirty (30) Days and to Third Party Claimants at least sixty (60) Days before the date on which any such statute of limitations may expire.

F. No Insurer shall represent to a Third Party Claimant that his or her rights may be impaired if he or she does not execute any form or release within a given period of time; provided however, nothing in this subsection shall be deemed to prohibit the Insurer from notifying the Third Party Claimant of any applicable statute of limitations.

G. At such time as there has been an affirmation of liability and the amount of the claim to be paid is no longer in dispute, the Insurer shall tender payment within thirty (30) Days thereof. In claims where multiple types of coverages under a policy are involved, the Insurer shall tender payment within thirty (30) Days of when payment under said type of coverage is no longer in dispute.

H. No Insurer shall require any Insured to submit to a polygraph examination unless authorized under the applicable Policy and state law.

I. In an Insurer's denial of a claim, in whole or in part, the Insurer shall notify the Claimant in writing as follows:

> We will be available to you to discuss the position we have taken. Should you, however, wish to contact the Rhode Island Department of Business Regulation, you may do so at the address listed below. In certain limited circumstances the Department may have jurisdiction pursuant to R.I. Gen. Laws § 27-9.1-6 and

therefore, you may be able to have the matter reviewed by the Department. The Department of Business Regulation does not have authority to settle or arbitrate claims, determine liability or order an Insurer to pay a claim.

Rhode Island Department of Business Regulation
Insurance Division
233 Richmond Street,
Providence, Rhode Island 02903.

The Rhode Island Department of Business Regulation, Insurance Division can be contacted by telephone at (401) 222-2223.

*Section 7.* ***Standards for Prompt, Fair and Equitable Settlements Applicable to Automobile Insurers***

A. Total Losses: Replacement Vehicles and Cash Settlement When the Policy provides for the adjustment and settlement of motor vehicle total losses on the basis of actual cash value or a Replacement Vehicle, one of the following shall apply:

(1) Replacement Vehicle

The Insurer may elect to offer a Replacement Vehicle. Said Replacement Vehicle shall be made available for the purpose of Claimant's inspection at a licensed dealer within a reasonable distance of the Claimant's residence. The Insurer's offer and Insured's acceptance or rejection must be documented in the Claim File.

(2) Cash Settlement

(i) The Insurer may elect to pay a cash settlement equal to the actual cash value of the motor vehicle less any deductible provided in the Policy. In determining the actual cash value of a motor vehicle to settle motor vehicle property damage liability and collision damage claims, Insurers shall use as a guide, the average retail values indicated by the National Automobile Dealers Association official Used Car Guide ("Guide") or some service substantially similar (with appropriate adjustment for such factors as vehicle condition, high and low mileage, accessory options). Nothing herein shall preclude a deviation from the Guide in cases where it can be shown that the vehicle in question was of substantially greater or lesser value in a particular geographical location than the average retail values that the Guide indicates. When the cash settlement amount is

affected by betterment or depreciation, the Insurer must support the deviation by documentation in the Claim File by giving particulars of the automobile condition that warrant said deviation. Any deductions or betterment from actual cash value from the Guide, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount. The basis for determining actual cash value shall be fully explained to the Claimant. All information that is the basis for such reduction shall be contained in the Claim File.

If the Insurer in the process of adjusting a total loss makes a deduction for salvage of the Claimant's vehicle, the Insurer must furnish the Claimant with the name and address of a salvage dealer who will purchase the salvage for the amount deducted.

(ii) If the Insurer is notified by the Claimant within thirty-five (35) Days of the receipt of the cash settlement that the Claimant has located a Replacement Vehicle but that said Replacement Vehicle cannot be purchased for the amount paid to the Claimant for the cash settlement, the Insurer shall reopen its Claim File and the following procedure(s) shall apply:

(a) The Insurer may either pay the Claimant the difference between the cash settlement and the cost of the Replacement Vehicle (adjusted for betterment, if any) which has been located by the Claimant; or

(b) The Insurer may locate a Replacement Vehicle as defined in Section 7(A)1 above; or

(c) If the Claimant is a First Party Claimant, the Insurer or Insured may invoke the loss settlement procedure as defined and provided for under the appraisal section of the Policy in force at the time of loss. This appraisal process shall be binding on both parties, but shall not preclude or waive any other rights either party has under the Policy or at common law; or

(d) The Claimant may exercise his or her right to Arbitration pursuant to R.I. Gen. Laws § 27-10.3-1.

B. Partial Losses

(1) If partial losses are settled on the basis of a written estimate, the Insurer shall supply the Claimant with a copy of the estimate. If the Claimant notifies the Insurer within thirty-five (35) Days of the receipt of the cash settlement for said partial loss, based upon a written estimate which he or she obtains, that necessary repairs will exceed the written estimate prepared by or for the Insurer, the Insurer shall:

(i) pay the difference between the written estimate and a higher estimate obtained by the Claimant, or

(ii) promptly provide the Claimant with the name of at least one Automobile Body Shop that will make the repairs for the amount of the written estimate. Said Automobile Body Shop shall be located within a reasonable distance from the Claimant's residence. The Insurer shall maintain documentation of all Communications. The Claimant shall not be required to use said Automobile Body Shop; however, the Insurer shall not be required to pay for the difference between the Insurer's written estimate and the Claimant's estimate if the Claimant chooses to use another Automobile Body Shop.

(2) When settling a claim under this subsection B, the amount of the settlement shall allow for the motor vehicle to be repaired to its condition prior to the loss within a reasonable time period.

For motor vehicles less than thirty (30) months beyond the date of manufacture, the Insurer shall not specify the use of an aftermarket part or used part whether OEM or otherwise, for the repair of the motor vehicle unless the Automobile Body Shop has written consent from the Claimant pursuant to R.I. Gen. Laws § 27-10.2-2.

For all motor vehicles thirty (30) months or more beyond date of manufacture, the Insurer shall not require the use of aftermarket parts or non-OEM parts in the repair of a motor vehicle, unless the part is at least equal in kind and quality to the original part in terms of fit, quality and performance. Insurers specifying the use of aftermarket parts or non-OEM parts shall consider the cost of any modifications which may become necessary when making the repair. All such aftermarket parts and non-OEM parts shall carry sufficient permanent non-removable identification so as to identify their manufacturer. Such identification shall be accessible to the extent possible after installation.

(3) Any deduction for betterment must be reasonable, itemized, specified as to dollar amount, and documented in the Claim File.

(4) An Insurer may not withhold payment to an Insured, pending reinspection under R.I. Gen. Laws § 27-10.1-9 or receipt of work-completed certification required pursuant to R.I. Gen. Laws §5-38-28.

C. Subrogation

An Insurer shall include the First Party Claimant's deductible, if any, in subrogation demands. Upon settlement of the subrogation claim, the First Party Claimant's Insurer shall pay its Insured the full deductible or the amount collected if less than the full deductible, less the Insured's prorated share of the subrogation expenses, if any. The subrogation expenses, as opposed to the Insured's deductible, are subject to prorating based on percentage of fault.

D. Towing and Storage

(1) Unless the Insurer has provided a Claimant with the name of a specific towing company prior to the Claimant's use of another towing company, the Insurer shall pay all reasonable towing charges irrespective of the towing company used by the Insured.

(2) The Department's Regulation for Storage Rates by Auto Body Shops shall apply to Insurers. The Insurer shall provide written notice to a Claimant, with a copy to the storage facility, prior to termination of payment for motor vehicle storage charges. Such notice shall be given in reasonable time so as to provide the Claimant the opportunity to remove the vehicle from storage prior to the termination of payment.

*Section 8.* ***Standards for Prompt, Fair and Equitable Settlements Applicable to Fire and Extended Coverage Type Policies with Replacement Cost Coverage***

A. Replacement Cost

When the Policy provides for the adjustment and settlement of First Party Claimant losses based on replacement cost, the following shall apply:

(1) When a loss requires repair or replacement of an item or part, any consequential physical damage incurred in making such repair or replacement not otherwise excluded by the Policy, shall be

included in the loss. The Insured shall not have to pay for betterment nor any other cost except for the applicable deductible.

(2) When a loss requires replacement of items and the replaced items do not match in quality, color or size, the Insurer shall replace all such items so as to conform to a reasonably uniform appearance. This applies to interior and exterior losses. The Insured shall not bear any cost over the applicable deductible, if any.

B. Actual Cash Value

(1) When the Policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage, the Insurer shall determine actual cash value as follows: replacement cost of property at time of loss less depreciation, if any. Upon the Insured's request, the Insurer shall provide a copy of the Claim File worksheet(s) detailing any and all deductions for depreciation.

(2) In cases in which the Insured's interest is limited because the property has nominal or no economic value, or a value disproportionate to replacement cost less depreciation, the determination of actual cash value as set forth above is not required. In such cases, the Insurer shall provide, upon the Insured's request, a written explanation of the basis for limiting the amount of recovery along the amount payable under the policy.

*Section 9.* *Department Complaint Review*

A Claimant who believes that there has been a violation of this Regulation may file a written complaint with the Division. All such complaints must be signed by the Claimant. All complaints filed with the Department shall be processed in accordance with the Division's internal complaint review process and, if the Division determines that reasonable cause exists, the complaint shall be handled in accordance with the Department's Rules of Practice and Procedure in Administrative Hearings.

All complaints filed with Department must be in writing.

The Department will only accept complaints filed by the individual Claimant, the Claimant's designated immediate family member (spouse, parent, sibling or offspring), Claimant's attorney admitted to practice law in this state, executor and/or administrator or other court-appointed legal representative of the Claimant's estate.

All disputes regarding the terms and provisions of the Policy which disputes are not covered by this Regulation and the Unfair Claims Settlement Practices Act, shall be resolved between the Insurer and the Claimant. The Department's authority is limited to

jurisdictional matters pursuant to R.I. Gen. Laws § 27-9.1-6. The Department does not have the authority to settle or arbitrate claims, determine liability or order an Insurer to pay a claim. Nothing herein shall be deemed to prohibit either the Insurer or the Claimant from seeking redress in the appropriate judicial forum.

*Section 10.* ***Effective Date***

This Regulation shall become effective on March 29, 1999 and supersedes the Department's prior Regulation entitled Unfair Property/Casualty Claims Settlement Practices Regulation.

| | |
|---|---|
| EFFECTIVE DATE: | February 14, 1994 |
| AMENDED: | March 29, 1999 |
| REFILED: | December 19, 2001 |