UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **RAYMOND BIGELOW**<br>Individually and as representative of all Rhode Island residents with current policies of automobile insurance issued by Allstate Insurance Company | : | |
| Plaintiffs, | : | C. A. No. 1:08-cv-00254-S-LDA |
| vs. | | |
| **ALLSTATE INSURANCE COMPANY & BRAD LALIBERTE** | : | |
| Defendants. | : | |

**<u>SUR-REPLY MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

In ¶'s 48 through 50; 58 through 63; and 72 through 76 of the Amended Complaint, Bigelow alleges individually and on behalf of the putative class that Allstate has been "unjustly enriched" as a direct result of the carrier's "material misrepresentations" relative to Allstate's ongoing "Customer Service Pledge" in the State of Rhode Island, juxtaposed with the carrier's non-transparent

"CCPR/DOLF" program. Allstate has failed to squarely address these allegations in its original or reply memorandums of law. In short, Bigelow alleges that Allstate has committed promissory fraud in this regard in violation of R.I.G.L. § 11-41-29 (4) entitled "Insurance fraud." This statute states in relevant part:

> "Every person, (including corporate Allstate) with the intent to deceive, presents or causes to be presented to any claimant any written statement, including computer-generated documents, as part of or in support of its contest of any claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false information material to the claim, shall be guilty of larceny."

In furtherance of its "CCPR/DOLF" claims handling program, Allstate sends "customers" such as Bigelow, a letter setting forth the "Customer Service Pledge." ("Plaintiffs' Objection," Ex. 2). The letter states in relevant part:

> "Because you have been involved in an accident with an Allstate policyholder, we consider you *our customer* and will provide you with quality customer service. In an effort to provide you with this quality customer service, *we promise* you the following: (Emphasis added)
>
> 1) We will fully explain the process, take the time to answer all questions and concerns that you may have,

and keep you informed throughout the claim process.

2) We will conduct a quick, fair investigation of the facts in your case.
3) To the extent that our policyholder was at fault in the accident:
   - We will assist you in providing for the repair of your vehicle and arranging for a rental vehicle;
   - We will help you determine if you are eligible to receive compensation for any injuries you may have suffered; and
   - We will discuss fair payment for your claim when you feel you are ready.

Your claim representative is dedicated to carrying out this Pledge."

The obvious intent of this letter is to establish a special relationship with these "customers" in order to discourage them from retaining counsel. What is not disclosed to these policyholder/customers is the fact that should they elect to retain counsel, their "customer" status would then secretively morph into an adversarial relationship, subject to the non-transparent "deny," "delay," "defend to the end" scorched the earth litigation tactics. If that is the chosen business model of corporate Allstate, then the carrier should refrain from its institutionalized lying promises to their premium paying policyholders. Lord Bowen's 1885 opinion in *Edgington v Fitzmaurice* 29 Ch. D. 459, 483 (Ch. App.

1885) has the most quoted line in promissory fraud jurisprudence: "The state of a man's mind is as much a fact as the state of his digestion." The issue of Allstate's corporate intent in sending all of its "customers," the "Customer Service Pledge," and thereafter, knowingly and intentionally breaching same, is an issue of fact, standing alone, that should compel this honorable Court to deny Allstate's Motion to Dismiss.

**SAME STANDRARD OF REVIEW FOR FED. R. CIV. P. 15 (a) and FED. R. CIV. P. 12 (b) (6)**

In the case of COX/COM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND v. JON CHAFFEE et al, C.A. No. 05-107S, this honorable Court addressed Fed. R. Civ. P. 15 (a) as follows:

"Fed. R. Civ. P. 15 (a) states that after a responsive pleading has been served, a claim may not be amended without leave of court. However, Rule 15 also provides that 'leave shall be freely given when justice so requires.' Fed. R. Civ. P. 15 (a) Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 222 (1962).

In Foman, the Supreme Court identified some of the reasons for denying a motion to amend. Those reasons include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' 371 U.S. at 182.

A motion to amend a complaint may be denied as futile if the 'complaint, as amended, would fail to state a claim upon which relief could be granted.' Glassman v. Computervision Corp., 9 F. 3d 617, 623 (1st Cir. 1996) *In determining whether a proposed amendment would be futile, a court applies the same standard as it would apply to a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6).* Id. (Emphasis added) The court must accept all the well-pleaded factual allegations as true and must draw all reasonable inferences favorable to the plaintiff but need not credit bald assertions or legal conclusions. Id. at 628. Thus, the motion should be granted only when it is clear that the plaintiff would not be able to prove any set of facts that would entitle the plaintiff to relief. Howard v.

Rhode Island, No. 96-064T, 1996 WL 33418794 at * 2 (D.R.I. December 31, 1996)."

In response to the written and oral arguments advanced by Allstate in support of its objection to the plaintiffs motion to amend, and *by applying the same standard of review as a Rule 12 (b) (6) motion*, the honorable Justice Thompson granted the plaintiff's motion to amend the complaint. As such, this decision is the law of the case. By removing the case to Federal Court, Allstate wants a second bite at the proverbial dispositive apple at this early stage of this litigation.

## SUR-REPLY ARGUMENT

1.) **Bigelow is an Allstate "Policyholder;" "Customer;" and "Third-Party Claimant." As such, Allstate has a contractual, AND "special relationship" with him and those similarly situated, and has otherwise assumed a duty of good faith and fair dealing with him and the putative class.**

In focusing solely on the fact that Bigelow has presented a third-party claim against another Allstate insured, Allstate wants this honorable Court to disregard the fact that Bigelow is an Allstate policyholder. As such, in exchange

for paying his insurance premiums, Bigelow is an owner of an Allstate insurance policy issued by Allstate, and thus has contractual rights with Allstate, including a duty of full and complete disclosure of the CCPR/DOLF claims handling program.

(See for example; *Dercoli v. Pennsylvania National Mutual Insurance Company and Grange Mutual Casualty Company*; 554 A. 2d 906, 520 Pa. (1989) ("We have long recognized that: 'the utmost fair dealing should characterize the transactions between an insurance company and the insured.' *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930). The appellees' agents in this case voluntarily undertook to provide assistance and advice to appellant and in the process advised her against retaining independent legal counsel. The appellees were bound to deal with the appellant on a fair and frank basis, and at all times, to act in good faith. The duty of an insurance company as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim.")

In addition to his contractual status as an Allstate "policyholder," Bigelow maintains that Allstate has expressly and affirmatively assumed a duty to him and other so-called "third-party claimants," by promising to treat them as "customers." Thereafter, for those "customers" such as Bigelow, who elect to retain counsel, Allstate unilaterally reneges on its "Customer Service Pledge." In his capacity as *both* an insured and third-party claimant, Bigelow maintains

that Allstate owes him an affirmative duty of good faith and fair dealing. (See for example *Enyart v. Transamerica Insurance Co.*, 195 Ariz. 71, 985 P. 2d 556 (App. 1998), in which the Arizona Court held that a bad faith tort claim may exist "if there is a 'special relationship' arising from elements of public interest, adhesion, and fiduciary responsibility." Id. at 76, 985 P. 2d at 561 (quoting *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 355, 813 P. 2d 710, 720 (1991). *Burkons* recognized that tort damages may be appropriate for the breach of special contractual relationships in which the object is "service, professional help, security or other intangibles." 168 Ariz. At 355, 813 P. 2d at 720.

2) **R.I.G.L. §9-1-33 explicitly provides a statutory cause of action when, as here, "an insured" (Bigelow) alleges that "the insurer" (Allstate) …"otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance."**

It is undisputed that in his capacity as an Allstate policyholder *and* Allstate "customer," Bigelow sought to have Allstate honor its "Customer Service Pledge." It is the plaintiffs position that by refusing to honor its pledge, Allstate has "*otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance" issued to Bigelow*. Mr. Laliberte asserted a bodily injury

claim against the policy *issued to Bigelow*. Mr. Bigelow, through counsel, sought information from *his carrier* relative to Allstate's so-called DOLF program and how said program may affect Allstate's overall handling of this claim on behalf of your respective policyholders Ms. Paula Laliberte as well as Mr. Raymond Bigelow." (See "Plaintiffs Objection" Ex's 3 & 4) In addition to violating the aforementioned section of § R.I.G.L. 9-1-33, Bigelow maintains that Allstate has committed the *tort* of bad faith by breaching its duty of good faith and fair dealing, in steadfastly refusing to disclose its claims handling program to its "insured/customers" "without a reasonable basis" for its refusal. (See generally, Bibeault v. Hanover Ins. Co., 447 A. 2d 313 (R.I. 1980) (holding that an insurer breaches its duty of good faith and fair dealing to an insured if it denies benefits under the policy without a reasonable basis for doing so and if it knows that it has no reasonable basis or acts in reckless disregard of that knowledge and the breach creates a common law cause of action *in tort*. (Emphasis added)

**3) Equitable Restitution and Disgorgement are Remedies Available to Bigelow and the Putative Class.**

In ¶ 71 of the Amended Complaint, in addition to seeking injunctive and equitable relief, Bigelow alleges that Allstate should be required … "to disgorge all of their ill gotten gains from the failure to fully and fairly disclose its CCPR/DOLF claims handling program to those class members who seek a return of their premiums…" In addition, Bigelow seeks … "any and all further relief in law and/or in equity, including costs, counsel fees, punitive damages, and rate reductions, as this honorable Court deems fair and just under the circumstances." It is based upon Allstates' reliance upon the plaintiffs' damage allegations that the carrier has removed this case to Federal Court pursuant to CAFA.

A victim of a wrong has the usual choice between restitution and damages. See e.g. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 212 (D. Me. 2004) ("Case law and commentary state that where there is a breach of duty, the common law ordinarily permits a plaintiff to choose the remedy: damage to the plaintiff, or gain to the defendant." In I Dan B. Dobbs,

*Law of Remedies*, § 3.1 at 280, damages and restitution are distinguished as follows:

> "Damages and restitution may happen to provide the same dollar recovery, but they are often triggered by different situations and always measured by a different yardstick. Damages always begin with the aim of compensation for the plaintiff, …Restitution, in contrast, begins with the aim of preventing *unjust enrichment* to the defendant. To measure damages, courts look to plaintiffs' loss or injury. To measure restitution, courts look at the defendants' gain or benefit."

Dobbs states plainly that "restitution is not damages; restitution is…required to prevent *unjust enrichment.* Id., § 4.1 (1) at 557. Dobbs acknowledges the practical importance of equitable restitution in two respects; (1) that it may provide plaintiffs a better recovery than compensatory damages, and (2) that it may provide relief for plaintiffs when there is no other alternative. Id., § 4.1 (2) at 561. In addition to the injunctive relief sought by Bigelow and the putative class (See generally *First State Orthopaedics v. Concentra, Inc.;* 534 F. Supp. 2d 500 (E.D. Pa 2007), the plaintiffs seek to establish restitutional relief from Allstate based upon the carrier's unjust enrichment that clearly has benefited Allstate shareholders, to the detriment of Allstate premium paying policyholders.

## CONCLUSION

Bigelow maintains that the individual and class allegations set forth in the Amended Complaint against Allstate, as granted by Justice Thompson, easily surpass the "plausible" standard. With limited discovery, plaintiffs seek to establish sufficient evidence to submit these allegations to a panel of jurors for their factual considerations.

WHEREFORE, Bigelow and the putative class respectfully request that this honorable Court deny the Motion to Dismiss and allow the parties reasonable discovery in support of their respective positions on the issues raised by the Amended Complaint.

Counsel for Bigelow requests oral argument and anticipates that approximately thirty (30) minutes will be required.

Raymond Bigelow, et al
By plaintiff's attorney,
/s/Dennis D. Bossian
Dennis D. Bossian, Esq. #3674
231 Quaker Lane
West Warwick, RI 02903
(401) 828-5463 P
(401) 828-5974 Fax
Dennis@Bosscourt.com

**CERTIFICATE OF SERVICE**

I, Dennis D. Bossian, hereby certify that on September 8, 2008, I served a copy of the foregoing Sur-Reply Memorandum in Opposition to Allstate's Reply Memorandum in support of its Motion to Dismiss either via the CM/ECF system or by U.S. Mail to:

Paul S. Callaghan, Esq.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903

Nancy D. Adams, Esq. (pro hac vice)
Kevin M. McGinty, Esq. (pro hac vice)
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC
One Financial Center
Boston, Massachusetts 02111

/s/ Dennis D. Bossian, Esq.
Dennis D. Bossian, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**RAYMOND BIGELOW** :
Individually and as representative
of all Rhode Island residents with
current policies of automobile
insurance issued by Allstate Insurance :
Company

Plaintiffs, : C. A. No. 1:08-cv-00254-S-LDA

vs.

**ALLSTATE INSURANCE** :
**COMPANY & BRAD LALIBERTE**

Defendants. :

**SUR-REPLY MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

In ¶'s 48 through 50; 58 through 63; and 72 through 76 of the Amended Complaint, Bigelow alleges individually and on behalf of the putative class that Allstate has been "unjustly enriched" as a direct result of the carrier's "material misrepresentations" relative to Allstate's ongoing "Customer Service Pledge" in the State of Rhode Island, juxtaposed with the carrier's non-transparent

"CCPR/DOLF" program. Allstate has failed to squarely address these allegations in its original or reply memorandums of law. In short, Bigelow alleges that Allstate has committed promissory fraud in this regard in violation of R.I.G.L. § 11-41-29 (4) entitled "Insurance fraud." This statute states in relevant part:

> "Every person, (including corporate Allstate) with the intent to deceive, presents or causes to be presented to any claimant any written statement, including computer-generated documents, as part of or in support of its contest of any claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false information material to the claim, shall be guilty of larceny."

In furtherance of its "CCPR/DOLF" claims handling program, Allstate sends "customers" such as Bigelow, a letter setting forth the "Customer Service Pledge." ("Plaintiffs' Objection," Ex. 2). The letter states in relevant part:

> "Because you have been involved in an accident with an Allstate policyholder, we consider you *our customer* and will provide you with quality customer service. In an effort to provide you with this quality customer service, *we promise* you the following: (Emphasis added)
>
> 1) We will fully explain the process, take the time to answer all questions and concerns that you may have,

and keep you informed throughout the claim process.

2) We will conduct a quick, fair investigation of the facts in your case.

3) To the extent that our policyholder was at fault in the accident:
   - We will assist you in providing for the repair of your vehicle and arranging for a rental vehicle;
   - We will help you determine if you are eligible to receive compensation for any injuries you may have suffered; and
   - We will discuss fair payment for your claim when you feel you are ready.

Your claim representative is dedicated to carrying out this Pledge."

The obvious intent of this letter is to establish a special relationship with these "customers" in order to discourage them from retaining counsel. What is not disclosed to these policyholder/customers is the fact that should they elect to retain counsel, their "customer" status would then secretively morph into an adversarial relationship, subject to the non-transparent "deny," "delay," "defend to the end" scorched the earth litigation tactics. If that is the chosen business model of corporate Allstate, then the carrier should refrain from its institutionalized lying promises to their premium paying policyholders. Lord Bowen's 1885 opinion in *Edgington v Fitzmaurice* 29 Ch. D. 459, 483 (Ch. App.

1885) has the most quoted line in promissory fraud jurisprudence: "The state of a man's mind is as much a fact as the state of his digestion." The issue of Allstate's corporate intent in sending all of its "customers," the "Customer Service Pledge," and thereafter, knowingly and intentionally breaching same, is an issue of fact, standing alone, that should compel this honorable Court to deny Allstate's Motion to Dismiss.

**SAME STANDRARD OF REVIEW**
**FOR FED. R. CIV. P. 15 (a) and FED. R. CIV. P. 12 (b) (6)**

In the case of COX/COM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND v. JON CHAFFEE et al, C.A. No. 05-107S, this honorable Court addressed Fed. R. Civ. P. 15 (a) as follows:

"Fed. R. Civ. P. 15 (a) states that after a responsive pleading has been served, a claim may not be amended without leave of court. However, Rule 15 also provides that 'leave shall be freely given when justice so requires.' Fed. R. Civ. P. 15 (a) Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 222 (1962).

In Foman, the Supreme Court identified some of the reasons for denying a motion to amend. Those reasons include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' 371 U.S. at 182.

A motion to amend a complaint may be denied as futile if the 'complaint, as amended, would fail to state a claim upon which relief could be granted.' Glassman v. Computervision Corp., 9 F. 3d 617, 623 (1st Cir. 1996) *In determining whether a proposed amendment would be futile, a court applies the same standard as it would apply to a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6).* Id. (Emphasis added) The court must accept all the well-pleaded factual allegations as true and must draw all reasonable inferences favorable to the plaintiff but need not credit bald assertions or legal conclusions. Id. at 628. Thus, the motion should be granted only when it is clear that the plaintiff would not be able to prove any set of facts that would entitle the plaintiff to relief. Howard v.

Rhode Island, No. 96-064T, 1996 WL 33418794 at * 2 (D.R.I. December 31, 1996)."

In response to the written and oral arguments advanced by Allstate in support of its objection to the plaintiffs motion to amend, and *by applying the same standard of review as a Rule 12 (b) (6) motion*, the honorable Justice Thompson granted the plaintiff's motion to amend the complaint. As such, this decision is the law of the case. By removing the case to Federal Court, Allstate wants a second bite at the proverbial dispositive apple at this early stage of this litigation.

## SUR-REPLY ARGUMENT

1.) **Bigelow is an Allstate "Policyholder;" "Customer;" and "Third-Party Claimant." As such, Allstate has a contractual, AND "special relationship" with him and those similarly situated, and has otherwise assumed a duty of good faith and fair dealing with him and the putative class.**

In focusing solely on the fact that Bigelow has presented a third-party claim against another Allstate insured, Allstate wants this honorable Court to disregard the fact that Bigelow is an Allstate policyholder. As such, in exchange

for paying his insurance premiums, Bigelow is an owner of an Allstate insurance policy issued by Allstate, and thus has contractual rights with Allstate, including a duty of full and complete disclosure of the CCPR/DOLF claims handling program.

(See for example; *Dercoli v. Pennsylvania National Mutual Insurance Company and Grange Mutual Casualty Company*; 554 A. 2d 906, 520 Pa. (1989) ("We have long recognized that: 'the utmost fair dealing should characterize the transactions between an insurance company and the insured.' *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930). The appellees' agents in this case voluntarily undertook to provide assistance and advice to appellant and in the process advised her against retaining independent legal counsel. The appellees were bound to deal with the appellant on a fair and frank basis, and at all times, to act in good faith. The duty of an insurance company as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim.")

In addition to his contractual status as an Allstate "policyholder," Bigelow maintains that Allstate has expressly and affirmatively assumed a duty to him and other so-called "third-party claimants," by promising to treat them as "customers." Thereafter, for those "customers" such as Bigelow, who elect to retain counsel, Allstate unilaterally reneges on its "Customer Service Pledge." In his capacity as *both* an insured and third-party claimant, Bigelow maintains

that Allstate owes him an affirmative duty of good faith and fair dealing. (See for example *Enyart v. Transamerica Insurance Co.*, 195 Ariz. 71, 985 P. 2d 556 (App. 1998), in which the Arizona Court held that a bad faith tort claim may exist "if there is a 'special relationship' arising from elements of public interest, adhesion, and fiduciary responsibility." Id. at 76, 985 P. 2d at 561 (quoting *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 355, 813 P. 2d 710, 720 (1991). *Burkons* recognized that tort damages may be appropriate for the breach of special contractual relationships in which the object is "service, professional help, security or other intangibles." 168 Ariz. At 355, 813 P. 2d at 720.

2) **R.I.G.L. §9-1-33 explicitly provides a statutory cause of action when, as here, "an insured" (Bigelow) alleges that "the insurer" (Allstate) …"otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance."**

It is undisputed that in his capacity as an Allstate policyholder *and* Allstate "customer," Bigelow sought to have Allstate honor its "Customer Service Pledge." It is the plaintiffs position that by refusing to honor its pledge, Allstate has "*otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance" issued to Bigelow*. Mr. Laliberte asserted a bodily injury

claim against the policy *issued to Bigelow*. Mr. Bigelow, through counsel, sought information from *his carrier* relative to Allstate's so-called DOLF program and how said program may affect Allstate's overall handling of this claim on behalf of your respective policyholders Ms. Paula Laliberte as well as Mr. Raymond Bigelow." (See "Plaintiffs Objection" Ex's 3 & 4) In addition to violating the aforementioned section of § R.I.G.L. 9-1-33, Bigelow maintains that Allstate has committed the *tort* of bad faith by breaching its duty of good faith and fair dealing, in steadfastly refusing to disclose its claims handling program to its "insured/customers" "without a reasonable basis" for its refusal. (See generally, Bibeault v. Hanover Ins. Co., 447 A. 2d 313 (R.I. 1980) (holding that an insurer breaches its duty of good faith and fair dealing to an insured if it denies benefits under the policy without a reasonable basis for doing so and if it knows that it has no reasonable basis or acts in reckless disregard of that knowledge and the breach creates a common law cause of action *in tort*. (Emphasis added)

**3) Equitable Restitution and Disgorgement are Remedies Available to Bigelow and the Putative Class.**

In ¶ 71 of the Amended Complaint, in addition to seeking injunctive and equitable relief, Bigelow alleges that Allstate should be required … "to disgorge all of their ill gotten gains from the failure to fully and fairly disclose its CCPR/DOLF claims handling program to those class members who seek a return of their premiums…" In addition, Bigelow seeks … "any and all further relief in law and/or in equity, including costs, counsel fees, punitive damages, and rate reductions, as this honorable Court deems fair and just under the circumstances." It is based upon Allstates' reliance upon the plaintiffs' damage allegations that the carrier has removed this case to Federal Court pursuant to CAFA.

A victim of a wrong has the usual choice between restitution and damages. See e.g. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 212 (D. Me. 2004) ("Case law and commentary state that where there is a breach of duty, the common law ordinarily permits a plaintiff to choose the remedy: damage to the plaintiff, or gain to the defendant." In I Dan B. Dobbs,

*Law of Remedies*, § 3.1 at 280, damages and restitution are distinguished as follows:

> "Damages and restitution may happen to provide the same dollar recovery, but they are often triggered by different situations and always measured by a different yardstick. Damages always begin with the aim of compensation for the plaintiff, …Restitution, in contrast, begins with the aim of preventing *unjust enrichment* to the defendant. To measure damages, courts look to plaintiffs' loss or injury. To measure restitution, courts look at the defendants' gain or benefit."

Dobbs states plainly that "restitution is not damages; restitution is…required to prevent *unjust enrichment.* Id., § 4.1 (1) at 557. Dobbs acknowledges the practical importance of equitable restitution in two respects; (1) that it may provide plaintiffs a better recovery than compensatory damages, and (2) that it may provide relief for plaintiffs when there is no other alternative. Id., § 4.1 (2) at 561. In addition to the injunctive relief sought by Bigelow and the putative class (See generally *First State Orthopaedics v. Concentra, Inc.;* 534 F. Supp. 2d 500 (E.D. Pa 2007), the plaintiffs seek to establish restitutional relief from Allstate based upon the carrier's unjust enrichment that clearly has benefited Allstate shareholders, to the detriment of Allstate premium paying policyholders.

## CONCLUSION

Bigelow maintains that the individual and class allegations set forth in the Amended Complaint against Allstate, as granted by Justice Thompson, easily surpass the "plausible" standard. With limited discovery, plaintiffs seek to establish sufficient evidence to submit these allegations to a panel of jurors for their factual considerations.

WHEREFORE, Bigelow and the putative class respectfully request that this honorable Court deny the Motion to Dismiss and allow the parties reasonable discovery in support of their respective positions on the issues raised by the Amended Complaint.

Counsel for Bigelow requests oral argument and anticipates that approximately thirty (30) minutes will be required.

Raymond Bigelow, et al
By plaintiff's attorney,
/s/Dennis D. Bossian
Dennis D. Bossian, Esq. #3674
231 Quaker Lane
West Warwick, RI 02903
(401) 828-5463 P
(401) 828-5974 Fax
Dennis@Bosscourt.com

**CERTIFICATE OF SERVICE**

I, Dennis D. Bossian, hereby certify that on September 8, 2008, I served a copy of the foregoing Sur-Reply Memorandum in Opposition to Allstate's Reply Memorandum in support of its Motion to Dismiss either via the CM/ECF system or by U.S. Mail to:

Paul S. Callaghan, Esq.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903

Nancy D. Adams, Esq. (pro hac vice)
Kevin M. McGinty, Esq. (pro hac vice)
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC
One Financial Center
Boston, Massachusetts 02111

/s/ Dennis D. Bossian, Esq.
Dennis D. Bossian, Esq.